The State *v.* Judge of the Sixth Judicial District.

A *mandamus* will be issued by the Supreme Court only as auxilliary to its appellate jurisdiction.

The Constitution does not confine the judiciary to the examination of such questions as may arise under the laws in force at the time of its adoption, but leaves to the Legislature the power of creating new clases of cases for the action of the courts.

It is not necessary, to constitute a judicial proceeding, that it should have all the requirements of a regular suit.

The Act of 1855 " To enable married women to contract debts and bind their paraphernal or dotal property," is but an extension of the powers already vested in the courts, and the Legislature had the right of imposing the duty required by this Act upon any court of original jurisdiction.

It not appearing that the refusal of the Judge to grant the certificate will occassion the applicant damage to the amount of $300, the *mandamus* is for this additional reason refused.

ON the application of *Ann L. Webb* for a *mandamus* to the Judge of the District Court of East Baton Rouge, *Beale*, J.

Merrick, C J.   The relator applied to the Judge of the Sixth District Court, under the Act of 1855, (p. 254,) to be authorized to execute a mortgage in order, as is alleged, to pay a pressing debt due on account of the paraphernal estate of the wife.

The late District Judge being of the opinion that the duty imposed by the Act of 1855 is not judicial, declined to examine the applicant and grant or refuse the certificate authorized by the statute.   He cites in support of his position the first Article of the Constitution, which divides the powers of the government into three departments, and prohibits each of the departments from exercising powers properly belonging to either of the others, and he concludes that the duty imposed by the Act properly belongs to the executive department, and ought to have been confided to a clerk or notary public, as deputy executive officers.

The present Judge in answer to the application for the *mandamus*, says that he waives any further answer to the application, and submits the case upon the reasons of his predecessor, as an answer, and as the ground of his refusal to act in the premises.

The line of demarkation between the different departments of the government is on many subjects so faint, that it sometimes presents questions of great embarassment.   The Constitution has but sketched the main outlines, and the filling up has been left to the departments themselves, and notably to the judiciary to determine where the one power ceases and the other begins.   Hence great caution ought to be used in the determination of these questions.   We find by the Constitution of 1845, it was provided that " No duties or functions should ever be attached by law to the Supreme or District Courts, or the several Judges thereof, except such as are judicial."

This prohibition has been omitted from the Constitution of 1852, and the question rests, as correctly stated by the Judge *a quo*, upon Article one of the present Constitution, which is nearly identical with the same Article in the Constitution of 1812.

We find that the Attorney General, the District Attorneys, Justices of the Peace, the Clerks, Sheriffs and Coroners are classed, as to their general duties, by the Constitution as belonging to the department of the judiciary.

STATE
*v.*
JUDGE 6TH DIS.

Under the Constitution of 1812, the Judges of the parish courts performed, for a period of thirty years, ministerial duties of the most opposite and varied characters. They ordered, as Judges of the probate court, the sale of real and personal estate, and sold it as auctioneers; they ordered petitions and executed their own orders as notaries public; they received wills as notaries, and ordered the same to be executed after the death of the party, as Judges; and finally, recorded the same as clerks of their own courts. They were Registers of Mortgages; they presided over Police Juries; they were Judges of elections; they authenticated the indentures of apprentices, and in certain cases transferred their unexpired terms; they licensed pedlars, registered births and deaths, recorded the brands of cattle, and held inquests over those who appeared to have come to their deaths by violence. Yet we are not aware that it was ever supposed that any of these multifarious duties were executive in the sense of the Constitution of 1812. They appear to have been considered ministerial, and as belonging rather to the judicial than the executive department of the government.

The ministerial duties, whether performed by the person exercising the judicial functions or by another officer as his agent, (as in the case of a Justice of the Peace who still acts as his own clerk,) are essential to the very existence of the judiciary. It is by the aid of ministerial acts and offices that matters are brought before the judiciary for judgment, and they are the hands by which the decrees of court are finally executed.

The duty, we conclude, imposed by the Act of 1855 is not one confided by the Constitution to the executive department.

Is the duty a ministerial or a judicial duty? If it is merely ministerial, although confided to the Judge of the District Court, there is no direct appeal from the act of the Judge to this court in any case, and, as a consequence, the application for a *mandamus* will not lie, because the *mandamus* is a process which issues from the court only as auxilliary to its appellate jurisdiction.

The Constitution, in the division of powers, was not intended to confine the judiciary exclusively to the examination of the classes of judicial questions which might arise under the laws as then in force, but it left to the Legislature the power of creating other classes of cases for the action of the court. The Legislature might compel the courts to take cognizance of new crimes and offences. It might modify the modes of proceeding and the rules of evidence. It might submit new questions of law arising from civil proceedings for the consideration of the courts, and still there could be no ground for the charge, that the Legislature was conferring upon the courts any of the powers belonging to the executive department.

Let us now see what is the nature of the duties imposed by the Act of 1855. A proceeding may be a judicial proceeding without having all the formal parties required in a regular suit, as in the case of the naturalization of foreigners, and many matters entrusted to the probate court.

Powers have for a long time been conferred upon our courts to adjudicate upon questions of capacity and *status*. The statute of 1829 conferred on the District Courts the power of emancipating minors over the age of nineteen years; the court of probates had the power to appoint guardians and curators, which was conferred by statute as early as 1807. Power to interdict, to examine lunatics and send them to asylums is vested in the courts.

Courts of justice had always exercised the power of decreeing a separation of <span style="float:right">STATE<br>*v.*<br>JUDGE 6TH DIS.</span> of goods between husband and wife. The Code of 1808 conferred upon the Judge power to authorize the wife to appear in a court of justice if the husband refused to give such authority. Moreover, if the husband refused to authorize his wife to pass an act respecting her separate estate, the Judge had power to cite or call her husband before him, and to authorize or refuse to empower the wife so to sign such act, and these provisions are retained in the Code of 1825. The statute of 1855, in question, is, therefore, but an extension of the powers already vested in the courts, and daily exercised by them. The Judge, by the last mentioned statute, is required to examine the wife separate and apart from her husband touching the object for which the money is to be borrowed or debt contracted. This examination is left to the discretion of the Judge, and he may conduct it under oath or not as he shall deem proper. It is not exclusive of other proofs which the wife may produce before him.

After such examination it is his duty, if he finds that the money to be borrowed or the debt to be contracted is intended for the advantage of the husband or the community, to refuse the authorization.

If, on the other hand, the wife shall satisfy the Judge that the same is for the benefit of her separate estate, or of her dotal property it is made his duty to issue the certificate.

It appears to us from this examination of the statute, that the Legislature had the power to impose this duty upon any court of original jurisdiction, although, as the Judge *a quo* suggests, it might have been conferred upon the clerk, under Article 76 of the Constitution, and probably upon notaries and other ministerial officers, if it had pleased the Legislature to have clothed the proceeding with forms less solemn than the sanction of a judicial officer.

But we have already said that the writ of *mandamus* is only issued by this court in cases where it has appellate jurisdiction. It does not appear from the proceedings, that the refusal of the Judge to grant the certificate will occasion the applicant damage to the amount of three hundred dollars. Without, therefore, considering the question, whether this court would have power to revise the exercise of the discretion vested in the District Judges by the Act of 1855, we are of the opinion that there is no sufficient showing to authorize the writ of *mandamus* to issue in this case.

It is, therefore, ordered, adjudged and decreed by the court, that the petition for a *mandamus* in this case be dismissed, and that said *Mrs. Ann L. Webb* and husband pay the costs.